IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SPRT, LLC, and LIVESPORTS VIDEO, LLC,

        Plaintiffs,

                          Civ. Action No.
                          5:10-CV-0809 (FJS/DEP)

      v.

B2 NETWORKS, INC., a/k/a B2
TECHNOLOGIES, INC.,

        Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFFS:

HARRIS, BEACH, LLC           JAMES R. MULDOON, ESQ.
One Park Place, Fourth Floor    TED H. WILLIAMS, ESQ.
200 South State Street
Syracuse, NY 13202

FOR DEFENDANT:

CHRISTIANSEN, BULLOCK LLC   JIM E. BULLOCK, ESQ.
Two Galleria Tower Center      BRIAN CASPER, ESQ.
13455 Noel Road - Suite 1000
Dallas, TX 75240

HISCOCK & BARCLAY, LLC     JOHN D. COOK, ESQ.
One Park Place
300 South State Street
Syracuse, NY 13202-2078

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiffs SPRT, LLC and LiveSportsVideo, LLC (collectively,

"LiveSports"), an assignee and a licensee under the patent in suit,

respectively, have commenced this action against defendant B2

Networks, Inc. ("B2"), alleging infringement of a patent teaching a system

for permitting access by viewers to minor-sporting contests and other

events not typically available through conventional channels.  B2 has

denied infringement and counterclaimed seeking a declaratory judgment

in its favor on the issues of infringement and patent validity.

Now that the court has construed certain of the relevant claim terms

over which the parties have disagreed, defendant B2 has moved for

summary judgment arguing that the patent in suit is invalid as a matter of

law.  In support of its motion B2 asserts that the patent fails to meet the

written description, enablement and definiteness requirements of 35

U.S.C. § 112, focusing principally upon the court's construction of the

terms "minor-sport" and "self-help".   Having considered the arguments

raised, which when analyzed center upon the contention that the patent

claims at issue contain terms that are unduly vague and subjective, in the

2

light of the strong presumption of validity attaching to a regularly issued patent and the requirement that invalidity be proven by clear and convincing evidence, I recommend that the defendant's motion be denied.

I.    BACKGROUND[1]

At the heart of this case is United States Patent No. 7,340,765 (the "'765 Patent"), issued by the United States Patent and Trademark Office ("PTO") on March 4, 2008, and describing a business model for promoting viewer access to minor-sporting contests, lectures, and other similar events, occurring primarily at the collegiate level.[2]  The '765 Patent relates to a concept that, from a technological standpoint, is refreshingly simple. The patent, which lists Robert H. Feldmeier as the inventor, is entitled "Archiving and Viewing Sports Events Via Internet", and discloses an internet-based clearing house designed to provide access to end-users of self-help or "do-it-yourself" video and audio recordings or live broadcasts of events, produced by the institutions involved, and sent to a central repository for organization and re-transmission.  '765 Patent 1:9-26.  The

---

[1]     In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[2]     The '765 patent is annexed to plaintiffs' complaint (Dkt. No. 1) as Exhibit A.

patent targets in particular sporting events that typically generate

insufficient interest to warrant professional broadcasting, including through

conventional sources such as television and cable networks.  '765 Patent

2:62-65.

　　　The business model described in the '765 Patent envisions that

originating institutions will capture such events, utilizing their own

equipment and resources, and forward them to a clearing house where

they are sorted, indexed, catalogued, and made available to subscribers.

'765 Patent 3:22-4:48.  The following drawing illustrates the preferred

embodiment of the invention which is the subject of the patent:



FIG.1

4

'765 Patent, Fig.  In that embodiment, an institution **20** such as a university, college, high school, athletic conference or athletic league utilizes a video production module **22** to capture an event, utilizing in-house resources and personnel.  '765 Patent 5:53-6:39.   The recording is then received by mail or courier, or by uploading via the internet, in a central clearing house computer system **12** where it is indexed by institution and event, and can be both stored on a digital memory facility **14** and also made available through an on-demand webcast facility for transmission over the internet to authorized subscribers **18**.  *Id.*

The '765 Patent contains eighteen claims; of those, only the first and last represent independent claims.  Claim one, which is representative of the two independent claims, serves as the useful backdrop for analysis of defendant's motion, providing as follows:

> 1. A self-help process of producing, storing, cataloging, and on-demand web casting of a multitude of minor-sport athletic events, each of which has a limited viewership but which in aggregate result in a significant volume of viewers, by self-help video production of a wide variety of minor-sport athletic events of interest to a wide number of groups of interested persons at each of a plurality of originating academic institutions, and of recording or storing, and processing and transmitting on demand the video recorded events to as wide as possible a field of subscribers, the athletic events being produced by respective ones of said originating academic institutions,

and each event being categorized in an identifiable category of athletic events, wherein such minor-sport events are characterized by having an associated group of interested persons that is too small to support the cost producing a television broadcast of the event, and whereby each said originating academic institution needs only send in the recorded video production to a central clearing house and needs to take no further steps to make the video recordings ready for subscribers for access over a global computer network, the processing comprising:

obtaining a video production of each of said minor-sport athletic events, by self-help, in-house capturing the event at said originating academic institution using at least one video camera and at least one microphone, such that the video productions each include at least one video channel and an audio channel;

said originating academic institution transmitting said video productions to the central digital clearing house, the clearing house having a computer processor for digitally processing each said video production to prepare the video channel and audio channel thereof for digitally processing each said video production to prepare the video channel and audio channel thereof for digital storage and retransmission, a digital memory arrangement with capacity sufficient for storing a multiplicity of said video productions; and a web transmission for transmitting the stored video productions of said minor-spot [sic] athletic events to said

6

subscribers on demand;

converting at said clearing house said video and audio
channels of said video productions to a
digital format suitable for webcasting,
and storing same at storage locations
on the associated digital memory
arrangement;

the step of converting including editing the content of said
video
production at said clearing house
without involving the originating
institution to render it suitable for digital
storage and transmission to a
subscriber;

said clearing house creating a subscriber accessible
catalog
of the video productions stored in the
memory arrangement at said clearing
house, the catalog having categories
including originating institution and type
of sporting event such that any
subscriber can select on each said
category of institution and type of event
to select directly a particular event for
viewing, by first selecting one category
or originating constitution and the
category of type of event, and then
selecting sporting events of said type
and of said originating institution;

said clearing house providing to said wide field of
subscribers digital access, via said
global computer network, to the video
recordings of the events as stored on
the memory arrangement at said

7

> clearing house, including providing
> each said subscriber access via said
> global computer network to said
> catalog, permitting the subscriber to
> select from the categories of originating
> institution and type of event of said
> catalog, and permitting the subscriber
> to select a desired video production by
> pointing and selecting from the video
> productions within said categories; and

> said clearing house transmitting to said subscriber the
> selected video production over said
> global computer network.

'765 Patent, 10:38-11:44.

The '765 Patent traces it roots back to an application filed by Inventor Feldmeier with the United States Patent and Trademark Office ("PTO") on October 2, 2003, U.S. Patent Application No. 10/677,934 (the "'934 Application"). *See* Defendant's Exh. 2 (Dkt. No. 46-7) p. 912. All eight claims contained within the '934 Application were rejected by the patent examiner on March 10, 2005. *Id.* at pp. 958-68. A Notice of Abandonment of the '934 Application was subsequently filed with the PTO on December 14, 2005. *Id.* at p. 1041-42.

On September 6, 2005, Feldmeier filed U.S. Patent Application No. 11/220,028 (the "'028 Application") as a continuation in part of the earlier '934 Application. Defendant's Exh. 2 (Dkt. No. 46-7) p. 780. The '028

Application was subsequently amended on December 20, 2006 to add more limitations, including "minor-sport athletic event". *Id.* at pp. 801-19. Following the rejection of a majority of the claims set forth in the '028 Application on July 11, 2007, *see id.* at pp. 832-47, and further refinement of the patentee's claims, *see id.* at pp. 857-65, the '028 Application was allowed on January 2, 2008. *Id.* at pp. 890-97. The '765 Patent was subsequently issued on March 4, 2008 and was thereafter assigned by the inventor to SPRT, LLC. *See* Complaint (Dkt. No. 1) ¶ 9.

Since the issuance of the '765 Patent B2 has endeavored, without success, to convince the PTO to engage in a re-examination of the patent. One such request was filed on July 20, 2011 by Steven Thrasher, Esq., on behalf of defendant B2. *See* Muldoon Decl. (Dkt. No. 59-2) Exh. H. That application was denied by the PTO on or about September 21, 2011. *Id.* at Exh. I.

II.   <u>PROCEDURAL HISTORY</u>

Plaintiffs commenced this action on July 6, 2010. Dkt. No. 1. In their complaint plaintiffs assert a single count, alleging infringement of the '765 Patent and claiming that the defendant's infringement was willful. *Id.* In response, defendant B2 filed an answer with counterclaims on

September 1, 2010, asserting patent invalidity as an affirmative defense and counterclaiming seeking a declaratory judgment concerning that issue as well as on the question of non-infringement.  Dkt. No. 9.

After first conferring, the parties sought the court's assistance based upon their disagreement over the intended meanings of the terms "minor-sport", "self-help", "originating academic institution"; "clearing house"; "send[ing]"; "submit[ting]"; "transmit[ting]"/"transmission"; and "video events" as utilized in the '765 Patent.  Following a hearing, I issued a report on September 1, 2011, recommending a construction for each of the terms in dispute.  Dkt. No. 38.  My recommendation was ultimately adopted by order issued by Senior District Judge Frederick J. Scullin, Jr. on March 30, 2012.  Dkt. No. 53.  Of particular relevance to the issues now before the court are two of the claims construed by the court in its *Markman*[3] ruling, as follows:

------

[3]     *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 116 S. Ct. 1384 (1996).

| Terms | Definition |
|-------|------------|
| "minor-sport" | any sporting or athletic game, meet, match, or other competition, or portion thereof, whose average potential viewership is below that which would justify conventional television coverage, either live or tape-delayed, by local, national or other media organizations. |
| "self-help" | substantially produced using an originating institution's resources |

On March 20, 2012, while my claim construction recommendation was pending review by District Judge Scullin, defendant moved seeking summary judgment based upon its claim of patent invalidity.  Dkt. No. 46.  Plaintiffs have since filed a submission in opposition to that motion.  Dkt. No. 54.  Defendant's summary judgment motion, which is now fully briefed and was the subject of a hearing conducted on May 9, 2012, is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  *See* Text Order Dated 3/21/12.

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is

warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In

the event this initial burden is met the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict"). Summary judgment is fully available in patent case, including on the question of invalidity, when the requirements of Rule 56(c) have been met, and the moving party has established both the lack of any genuine issues of material fact and entitlement to judgment as a matter of law. *Univ. of Rochester v. G.D. Searle & Co., Inc.,* 358 F.3d 916, 919 (Fed. Cir. 2004).

B.    Analysis

Without offering any extrinsic evidence, relying instead solely upon the patent and its prosecution history, defendant B2 argues that despite having been issued and the failure of its efforts to obtain re-examination by the PTO, the '765 Patent fails to meet the statutory requirements for the issuance of a valid patent, as a matter of law.  Defendant's invalidity argument centers upon the terms "minor-sports" and "self-help" and the court's construction of those terms and raises three distinct issues, although, in the end they appear to collapse into a single inquiry.  B2 maintains the claims of the '765 Patent fail to meet the written description and enablement requirements of 35 U.S.C. § 112 ¶ 1, and that the patent claims are hopelessly indefinite under paragraph two of that provision.

1.    Presumption of Validity

The invalidity arguments raised by the defendant must be analyzed against the backdrop of the independent presumption of validity which attaches to each claim contained within a regularly issued patent.  35 U.S.C. § 282; *see Microsoft Corp. v. i4i Limited Partnership*, ___ U.S. ___, 131 S. Ct. 2238, 2243 (2011); *Continental Can Co., USA, Inc., v. Monsanto Co.*, 948 F.2d 1264, 1266-67 (Fed. Cir. 1991).  Under section

14

282, a "party asserting invalidity not only has the procedural burden of proceeding first and establishing a prima-facie case, but the burden of persuasion on the merits remains with that party until final decision." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983); *see also ConMed Corp. v. Erbe Electromedizin GmbH*, 241 F. Supp. 2d 187, 192 (N.D.N.Y. 2003) (citing, *inter alia*, *Stratoflex*), *vacated due to settlement*, No. 00-CV-987, 2004 WL 1576596 (N.D.N.Y. Jun. 29, 2004). Any party seeking to overcome this presumption of validity must do so by clear and convincing evidence.  *Microsoft*, 131 S. Ct. at 2243; *Univ. of Rochester,* 358 F.3d at 920 (citing *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001)); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1377 (Fed. Cir. 2002) (citations omitted); *see also Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1573-74 (Fed. Cir. 1985).  This heightened standard applies with equal force to a claim of invalidity based upon an alleged failure to meet the requirements of 35 U.S.C. § 112. *Ralston Purina*, 772 F.2d at 1574.

      2.    <u>Section 112</u>

The requirements for a patent specification are set forth in 35 U.S.C. § 112.  That section provides, in pertinent part, as follows:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
>
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112, ¶¶ 1-2.  The first of these two paragraphs of section 112 has conventionally been labeled as requiring that a specification disclose both a written description of the invention and the manner and process of making it, the latter requirement to be judged by whether the specification enables a person of ordinary skill in the art to practice the invention.  *See, e.g., Ariad Pharm., Inc. v. Eli Lilly and Co.,* 598 F.3d 1336, 1344 (Fed. Cir. 2010); *Univ. of Rochester*, 358 F.3d at 923.  The second paragraph of that section overlays a requirement of definiteness upon a patent's claims.  *Halliburton Energy Serv., Inc. v. —I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

### 3.   Written Description

The Federal Circuit has long recognized that the first paragraph of

section 112 imposes a written description requirement, mandating that the

invention be sufficiently described to permit a person of ordinary skill in

the art to conclude that the patent applicant invented that which is

claimed.  *Ariad Pharm., Inc*., 598 3d. at 1351.   As the Federal Circuit has

observed,

> a separate requirement to describe one's invention
> is basic to patent law.  Every patent must describe
> an invention.  It is part of the *quid pro quo* of a
> patent; one describes an invention, and if the law's
> other requirements are met, one obtains a patent.
> The specification must then, of course, describe
> how to make and use the invention (*i.e.,* enable it),
> but that is a different task.  A description of the
> claimed invention allows the United States Patent
> and Trademark Office ("PTO") to examine the
> applications effectively; courts to understand the
> invention, determine compliance with the statute,
> and to construe the claims; and the public to
> understand and improve upon the invention and to
> avoid the claimed boundaries of the patentee's
> exclusive rights.

*Id.* at 1345.

The question of whether a patent specification satisfies the written

description requirement of section 112, first paragraph, is judged from a

standpoint of a person of ordinary skill in the art.  *Ariad Pharm., Inc*., 598

F.3d. at 1351;  *see also Streck, Inc. v. Research & Diagnostic Sys., Inc.,*

665 F.3d 1269, 1285 (Fed. Cir. 2012).  In the words of the Federal Circuit,

17

> the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.

*Id.* (citations omitted); *see also Streck*, 665 F.3d at 1285.

> [T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.

*Ariad Pharm., Inc*., 598 F.3d. at 1351.  This inquiry presents an issue of fact.   *Id.* (citing *Ralston Purina,* 772 F.2d at 1575.  "'Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the nonmoving party.'"  *Streck,* 665 F.3d at 1285 (quoting *Power Oasis, Inc. v. T. Mobil USA, Inc.,* 522 F.3d 1299, 1307 ( Fed. Cir. 2008); *see also Ariad Pharm.,* 598 F.3d at 1351; *Univ. of Rochester*, 358 F.3d at 929.

The question of whether a patent specification satisfies the written description requirement is contextual, and not necessarily well-suited to implementation of bright line rules; instead, definiteness must be

evaluated on a case-by-case basis considering the invention disclosed and the state of knowledge in the relevant field.  *Ralston Purina*, 772 F.2d at 1575; *Wyeth v. Abbott Labs.,* No. 08-230 (JAP), 08-1021 (JAP), 2012 WL 175023, at *5 (D.N.J. Jan. 19, 2012). "The level of detail required to satisfy the written description requirement depends, in large part, on the nature of the claims and the complexity of the technology." *Streck,* 665 F.3d at 1285 (citation omitted).  In some instances a patentee can rely in the description upon information well known in the field in question to satisfy the requirements of section 112.  *Id.*

The written description argument advanced in defendant's motion represents little more than an extension of its claim that the '765 Patent is invalid as indefinite.  B2 offers no extrinsic evidence to suggest that a person of ordinary skill in the art would not understand the bounds of the invention claimed.[4]  There is, of course, no legal requirement that an accused infringer seeking to prove invalidity for failure to meet the

---

[4]     For purposes of the '765 Patent, the court has previously defined a person of ordinary skill in the art as "having at least an associate's degree in engineering, or comparable training, and familiarity with internet broadcasting capabilities, as well as an understanding of, or experience in, producing and broadcasting sports events for academic institutions."  *See* Report and Recommendation, Dated 9/1/11 (Dkt. No. 38) p. 13, adopted by Order, dated March 30, 2012 (Dkt. No. 53).

requirements of section 112 must submit extrinsic evidence in order to

meet its burden of establishing entitlement to summary judgment.  *Univ. of*

*Rochester*, 358 F.3d at 927.  As the Federal Circuit has noted,

> [i]n *PIN/NIP, Inc. v. Platte Chemical Co.*, 304 F.3d
> 1325 (Fed. Cir. 2002), for example, we held that a
> patent can be held invalid for failure to meet the
> written description requirement, based solely on
> the language of the patent specification.  After all,
> it is the patent specification where the written
> description requirement must be met.

*Id.*  In this instance, however, B2 has offered nothing apart from rank

speculation to show that a person of ordinary skill, when reading the '765

specification, would not fully understand that Robert Feldmeier invented

what is claimed.

The technology associated with the invention is not particularly

complex.  The patent's specification, with its description of the invention

and illustrative embodiments, contains a great deal of information as to

how the invention is to be practiced.  The patent specification, with its

potential embodiments, including Figure 1, describe in detail the system

by which sporting and other events are captured by participating leagues

and institutions, utilizing in-house resources, forwarded to a central

repository where they are indexed and catalogued, and then made

available from the central digital clearing house to subscribers.

Considered in this light, defendant has failed to demonstrate the lack of

any genuine issues of material fact and that no reasonable factfinder

could conclude that B2 has failed to meet its burden of establishing patent

invalidity for failure to meet the written description requirement of section

112 by clear and convincing evidence.  I therefore recommend that the

court deny defendant's motion for summary judgment on the ground that

the '765 Patent fails to meet the written description requirements of

section 112, first paragraph.

### 4.    Enablement

The enablement requirement of section 112 demands that a patent

specification describe the subject invention with sufficient particularity to

permit a person of ordinary skill in the art to make and use the claimed

invention without undue experimentation.  *Streck,* 665 F. 3d at 1288.

"Enablement is determined as of the effective filing date of the patent's

application."  ALZA *Corp. v. Andrx Pharm., LLC,* 603 F.3d 935, 940 (Fed.

Cir. 2010) (citing *Enzo Biochem, Inc. v. Calgene, Inc.,* 188 F.3d 1362,

1371-72 (Fed. Cir. 1999)).  Whether a patent specification meets this

enablement requirement is a question of law, although it is markedly

dependent upon factual underpinnings.  *Streck*, 655 F.3d at 1288; *ALZA*

*Corp.,* 603 F.3d at 940.  A patentee's failure to meet the established

requirement of section 112 must be demonstrated by clear and convincing

evidence in view of the presumption of validity that attaches to a regularly

issued patent.  *Streck*, 665 F.3d 1288; *ALZA Corp.,* 603 F.3d at 940.

The Federal Circuit has identified a series of factors which a court

may consider in determining whether the enablement requirement of

section 112, first paragraph has been met, including

> (1) the quantity of experimentation necessary (2)
> the amount of direction or guidance presented (3)
> the presence or absence of working examples, (4)
> the nature of the invention, (5) the state of the prior
> art, (6) the relative skill of those in the art (7) the
> predictability or unpredictability of the art, and (8)
> the breadth of the claims.

*In re: Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (footnote omitted); *see*

*also ALZO Corp.,* 603 F.3d at 940; *Wyeth*, 2012 WL 175023, at *5.

Once again, relying purely upon attorney argument and with no

proof of how the '765 Patent would be viewed from the perspective of a

person of ordinary skill in the art, defendant urges a finding as a matter of

law that the patent fails to meet the enablement requirements of section

112, first paragraph.  Yet, the patent contains a detailed specification and

a description of the preferred embodiment that appear on the face of the patent to provide considerable enlightenment concerning the invention disclosed.   The invention at issue is relatively simplistic and well explained in the patent, and substantial guidance is provided in the patent specification concerning how to practice the invention.

The focus of B2's motion is clearly upon the terms utilized in the patent, including "minor-sport" and "self-help".  As construed by the court, however, the use of those terms does not seem to be particularly daunting to a person of ordinary skill in the art, particularly one with an understanding of or experience in producing and broadcasting sports events for academic institutions.

Simply stated, defendant's assertion that the enablement requirement has not been met and that significant experimentation would be required in order to practice the invention, is not well-supported.  In any event, at this procedural stage defendant has failed to carry its burden of demonstrating that a person of ordinary skill in the art would be unable to read the '765 Patent and practice the invention disclosed without undue experimentation.  I therefore recommend a denial of defendant's motion for summary judgment on the grounds for failure to meet the enablement

requirements of section 112, first paragraph.

　　　　5.　　Definiteness

　　　The centerpiece of defendant's motion is the claim that the '765

Patent fails to meet the definiteness requirement of the second paragraph

of section 112.　That provision requires that a patent specification "shall

conclude with one or more claims particularly pointing out and distinctly

claiming subject matter which the applicant regards as his invention."　35

U.S.C. § 112 ¶ 2.　As can be seen, unlike paragraph one of section 112,

which is focused upon the patent specification as a whole, paragraph two

requires the court to gauge the adequacy of the claims of a particular

patent.　"A determination that a patent claim is invalid for failing to meet

the definiteness requirement in 35 U.S.C. § 112 ¶ 2 is a legal question . .

.".　*Young v. Lumenis, Inc.,* 492 F.3d 1336, 1344 (Fed. Cir. 2007)

(citations omitted); *see also Bancorp Services, L.L.C. v. Hartford Life Ins.

Co.,* 359 F.3d 1367, 1371 (Fed. Cir. 2004).　And, it bears repeating that in

light of the presumption of validity, a party seeking to establish

indefiniteness must show facts supporting that conclusion by clear and

convincing evidence. *Enzo Biochem, Inc. v. Applera Corp.,* 599 F.3d

1325, 1331 (Fed. Cir. 2010) (citing *Young,* 492 F.3d at 1345); *Datamize,*

24

*LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).

The definiteness inquiry is focused upon whether a person of

ordinary skill in the art would understand what is claimed by the patentee.

*Enzo Biochem*, 599 F.3d at 1332.  That requirement mandates that claims

be sufficiently definite to inform the public of the bounds of the invention.

*Halliburton Energy Servs.,* 514 F.3d at 1249; *see also Datamize*, 417 F.3d

at 1347 ("[T]he purpose of the definiteness requirement is to ensure that

the claims delineate the scope of the invention using language that

adequately notifies the public of the patentee's right to exclude, . . .")

(citing *Honeywell Int.'l, Inc. v. Int'l Trade Comm'n,* 341 F.3d 1332, 1338

(Fed. Cir. 2003)).  This claim definiteness requirement imposed under the

second paragraph of section 112, ensures that patent claims are

"'sufficiently precise to permit a potential competitor to determine whether

or not he [or she] is infringing.'" *Amgen Inc. v. Hoechst Marion Roussel,*

*Inc.*, 314 F.3d 1313, 1342 (Fed. Cir. 2003) (quoting *Morton Int'l, Inc. v.*

*Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993)).  As the

Supreme Court has observed, "[i]t has long been understood that a patent

must describe the exact scope of an invention and its manufacture to

secure to [the patentee] all to which he is entitled, [and] to apprise the

public of what is still open to them." *Markman*, 517 U.S. at 373, 116 S. Ct. at 1387 (internal quotations and citations omitted).  A claim satisfies the definiteness mandate when one skilled in the art understands the claim parameters as read in light of the specification.  *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998) ("'If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more.'") (quoting *Miles Lab., Inc. v. Shandon, Inc.*, 997 F.2d 879, 875 (Fed. Cir. 1993)).

In its motion B2 challenges the claims of the '765 Patent as unduly imprecise.  "The definiteness requirement, however, does not compel absolute clarity.  Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Datamize,* 417 F.3d at 1347 (citations omitted).  "Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning." *Id.; see also Amgen,* 314 F.3d at 1342 ("[A] claim is not indefinite merely because its scope is not ascertainable from the face of the claims . . . [r]ather, a claim is indefinite . . . if it is insolubly ambiguous, and no narrowing construction can properly be reached.") (internal quotations and citations omitted).

In should also be noted that the fact that claim construction proves a formidable task does not invariably lead to a finding of invalidity for indefiniteness.  *Id.*  A claim construction which is difficult, and upon which a reasonable persons may disagree, does not invariably lead to the conclusion that the definiteness requirement of section 112, paragraph two has not been met.  *Halliburton*, 514 F.3d at 1249 (citing *Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1375 (Fed. Cir. 2001).

An accused infringer claiming invalidity as the basis of indefiniteness faces a heavy burden.  "[T]his standard is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and prosecution history, as well as her knowledge of the relevant art area."  *Halliburton*, 514 F.3d at 1249-50.  A finding of indefiniteness is warranted "only if reasonable efforts of claimed construction prove futile, . . ."  *Bankcorp Services,* 359 F.3d at 1371. Close questions concerning whether a patent claim is sufficiently definite must be resolved in favor of the patentee.  *Bankcorp Services*, 359 F.3d at 1371.  "The common thread (in Federal Circuit cases involving

indefiniteness) is that claims were held indefinite only where a person of ordinary skill in the art could not determine the bounds of the claims, i.e., the claims were insolubly ambiguous." *Halliburton*, 514 F.3d at 1249.

Defendant's complaint, when addressing the question of definiteness, is that the terms contained within the claims of the '765 Patent, including notably "minor-sport" and "self-help", interject an unacceptable degree of subjectivity and ambiguity into the claims. The mere fact that a patent claim lacks total precision in its lines of demarcation, however, does not necessarily prove fatal; words that imply varying degrees, for example, can be employed in a properly issued patent, providing that there exists some standard for applying the term. *Enzo Biochem*, 599 F.3d at 1332. "Similarly, when a claim limitation is defined in 'purely functional terms' a determination of whether the limitation is sufficiently definite is 'highly dependent on context (*e.g,* the disclosure of the specification and the knowledge of a person of ordinary skill in the relevant area).'" *Enzo Biochem,* 599 F.3d at 1332-33 (quoting *Halliburton Energy Servs.,* 514 F.3d at 1255).

Having carefully considered defendant's motion, I conclude that it is facially deficient. While it addresses the available intrinsic evidence,

including the patent and its prosecution history, and speculates as to the meaning of various of the terms, defendant offers no evidence, nor does it even take into account, how a person of ordinary skill in the art would have understood the patent at the time of the invention.  Instead, to support its argument B2 focuses upon the language of the court's construction of "minor-sport" and poses hypothetical questions concerning various of its components, including "average potential viewership," hypothesizing that the use of such terminology interjects an unacceptable level of subjectivity into the term.

The question of definiteness, however, is highly contextual. *Enzo, Biochem*, 599 F.3d at 1332.  By focusing on those three words the defendant overlooks that they are placed into context by the requirement that a "minor-sport" be an event whose average potential viewership would be below that which would justify conventional television coverage. Defendant offers no evidence to suggest that a person of ordinary skill in the art versed in the field of producing and broadcasting sports events would not understand that term, and indeed the patent's prosecution history suggests otherwise.  *See* Defendant's Exh. 2 (Dkt. No. 46-7) p. 867.  ("The persons to whom this patent application is directed know

exactly what that term 'minor-sports' means in this context and which sports activities would come under that category.")  In short, use of the term "minor-sport" does not render the claims at issue in the case "insolubly ambiguous" to a person of ordinary skill in the art.[5]

This case is readily distinguishable from *Datamize*, *LLC v. Plumtree Software, Inc.,* in which the Federal Circuit determined that the term" aesthetically pleasing" was impermissibly subjective, without guidance in the form of an objective standard in the patent specification or prosecution history by which a person of ordinary skill in the art could apply that term. *Datamize*,  417 at 1350.  The Federal Circuit has never held that the use of term of degree in a patent claim is *per se* impermissible as invariably leading to a finding of indefiniteness.  Indeed, courts have recognized that the use of such a term can be acceptable provided a person of ordinary skill in the art is able to apply the term.  *See, e.g, Enzo Biochem,* 599 F.3d at 1325, 1333-1336 (use of the term "substantially" does not render a claim indefinite when intrinsic evidence provides sufficient guidance to enable a person of ordinarily skill in the art to determine the scope of the

---

[5]        There is at least some irony in the fact that the not-dissimilar term "not-major collegiate sporting events" was used to describe an embodiment of an invention disclosed in a patent assigned to B2.  *See* Muldoon Decl. (Dkt. No. 59-2) Exhs. D and E.

claims); *see also Viskase Cos., Inc. v. Worldpac Int'l, AG,* 714 F. Supp. 2d 878, 882 (N.D. Ill. 2010) (patent claim including the phrase "no measurable losses" found not to be necessarily indefinite despite lack of mathematical precision, where a person of ordinary skill in the art would be able to apply the term); *Piersons v. Quality Archery Designs, Inc.,* No. 3:06-CV-0408, 2008 WL 802344, at *5-7 (N.D.N.Y. Mar. 20, 2008) (McAvoy, S.J.) (use of the word "relatively" in a patent does not render the patent hopelessly invalid nor does it signify an ambiguity eluding construction).

B2 argues that the use of the terms "self-help" and "minor-sport" renders the '765 patent indefinite.  However, the patent and patent prosecution history provide ample guidance regarding the term "self-help", as was recognized in my claim construction report and recommendation. *See* Report and Recommendation, dated September 1, 2011 (Dkt. No. 38) pp. 18-20.  The '765 patent specification describes the term "self-help" as the functional equivalent of "do it yourself".  *See, e.g.,* '765 Patent, 2:50-53.  In communications with the PTO the inventor noted that

> [t]he intention is that the production be as *"self-help"* as possible, that is, the production is carried out by any available students or athletic department personnel, and does not require a

> high-cost, heavily equipment-intensive professional production of the type that is carried out by a crew from a commercial television broadcast or cablecast station.

Defendant's Exh. (Dkt No. 46-7) p. 869 (emphasis in original).  In a later response to a PTO office action, the inventor further stated that

> the term "self-help" means that the persons involved in the production can be persons without any experience in video journalism, and do not need any special training to operate the control module, recorder, cameras or microphones.  This opens the door for members of the team or club to attend to the video production entirely on their own . . . The term "do it yourself" has a similar meaning, and is used somewhat interchangeably [with the term "self-help"].

*Id.* at pp. 985-86.

Conspicuously lacking in defendant's motion is any evidence as to how a person of ordinary skill in the art at the time the patent was issued would have understood this term.  Finding no basis to conclude that the term is "insolubly ambiguous", I recommend rejection of this portion of B2's summary judgment motion.

The second prong of B2's indefinite argument is directed toward use of the term "minor-sport".  This term, however, has also been found by the court to be susceptible of construction.  Focusing on that construction, B2

questions how a person of ordinary skill in the art would know whether a particular event would attract viewership below that which would justify conventional coverage.  It appears, however, that defendant's position rests upon a unduly restrictive view of a person of ordinary skill in the art.  In its reply memorandum, for example, B2 contends that under the court's definition that person "has no television, marketing or executive experience", essentially regarding the person as the functional equivalent of a mere "technician".  *See* Defendant's Reply Memorandum (Dkt. No. 60) p. 2.  This position conspicuously ignores the requirement that the person of ordinary skill in the art also have "an understanding of, or experience in producing and broadcasting sports events for academic institutions", a concept which implies knowledge of and experience in television production and advertising.

Without citation, defendant cavalierly rejects out-of-hand the notion that if the person of ordinary skill in the art knows a "minor-sport" when he or she sees one, this can be sufficient for purposes of meeting the requirements of section 112.  *See* Defendant's Reply Memorandum (Dkt. No. 60) p. 5.  But the Federal Circuit has made clear, to the contrary, that the court may take into account the knowledge of a person of ordinary skill

33

in the art when determining the issue of definiteness.  *Halliburton*, 514

F.3d at 1249.  To reiterate, in this case the defendant has offered no

evidence to show what a person of ordinary skill in the art, as defined by

the court, would have known and how he or she would have viewed the

term "minor-sport" at the time of issuance of the patent.

One of the fallacies of B2's arguments lies in its assumption that if

an event is commercially broadcast, it therefore cannot meet the definition

of minor-sport.  Nowhere does the '765 Patent provide support for this

view.  Consider, for example, that a commercial or cable television system

makes a conscious decision to nationally broadcast an Ultimate Frisbee

contest.  Claim sixteen of the '765 Patent makes it clear that such a event

would be viewed as a minor-sport for purposes of the patent.  Yet, in

defendant's hypothetical it is suggested that such an event must be

considered on a game-by-game basis to determine whether a commercial

or cable television network has decided to broadcast a particular game,

and thus can only be meaningfully evaluated in hindsight.

To further support its argument, by way of illustration, in its first

example the defendant compares a women's basketball game between

Syracuse University and the University of Connecticut, which apparently

was televised commercially, with a women's basketball game played shortly thereafter between Syracuse University and the University of South Florida, which was not.  The fallacy in this example is that both appear to fall within the definition of minor-sport notwithstanding that the first was televised commercially while the later was not.  Defendant's argument fails because the term speaks not to specific games, but rather to events generally whose average potential viewership is below that which would justify conventional television coverage on national or other media organizations.

The broad brush with which B2 paints is exposed by consideration of dependent claim 16 of the '765 Patent which, by implication, defendant maintains is also insolubly indefinite.  That claimed discloses:

> **16.** The process of producing and transmitting video events
> according to claim 1, wherein said minors [sic] sports events
> are selected from the group that consists of track meets,
> wrestling meets, swimming and diving meets, tennis matches,
> and Ultimate Frisbee contests.

'765 Patent, 12:55-59.  In its motion, B2 makes no argument as to why, even if the term "minor-sports" interjects an impermissible level of subjectivity, claim sixteen with its focused specification of the events covered is not sufficiently definite to overcome its objections.

35

In its reply addressing plaintiff's argument regarding claim sixteen, B2 has attempted to advance a tortured construction of that claim.  As can be seen, claim sixteen is a dependent claim which further limits claim one by providing that "said minors [sic] sports events are selected from the group that consists of track meets, wrestling meets, swimming and diving meets, tennis matches, and Ultimate Frisbee contests."  Defendant argues that those events listed are not necessary always minor-sports.  *See* Reply Memorandum (Dkt. No. 6) at p. 6.  This position statement flies in the face of accepted construction tenets, to the effect that absent a clear showing of contrary intent by the patentee it is presumed that such a further refinement narrows the term "minor-sports", and that the referenced sports all necessary fall within that category.  *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed. Cir. 1995).

In summary, the touchstone of indefiniteness is the inability to arrive at a suitable construction of patent claims capable of being understood by a person of ordinarily skill in the art.  While the defendant's attorneys have expressed their uncertainty as to the meaning of the terms "minor-sport" and "self-help", their understanding is legally irrelevant.  Instead, what is at issue – and what they have failed to prove by clear and convincing

36

evidence as a matter of law – is how a person of ordinary skill in the art would view those terms, as utilized in the '765 Patent, and that such a person would find the claims at issue to be insolubly ambiguous.

The court has already concluded that the terms identified by B2 in support of its indefiniteness argument are in fact susceptible of a proper construction.  While in its motion B2 hypothesizes, based exclusively upon attorney argument, that a person or ordinary skill in the art would not be able to understand the boundaries of the '765 Patent, particularly given the court's construction of "minor-sport" and "self-help", it offers no evidence to support that argument.  Instead, defendant's indefiniteness argument appears to represent little more than attempt to obtain a second bite at the apple and convince the court that its construction of the terms "minor-sport" and "self-help" are erroneous.  I therefore conclude that defendant has failed to shoulder its substantial burden of demonstrating the lack of any genuine issues of fact and that a person of ordinary skill in the art would not be able to understand the limitations of the '765 Patent claims, and thus recommend denial of its summary judgment motion.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

In reviewing the '765 Patent itself, together with other intrinsic

evidence, including the history associated with its prosecution, the court was able to construe certain of the terms of its claims upon which the parties were in disagreement.  Defendant B2 now claims that with those constructions, the patent fails to meet the written description and enablement requirements of 35 U.S.C. § 112, paragraph one, and is hopelessly indefinite in contravention of paragraph two of that section.  In the end, however, these separate arguments appear to merge into a claim that the '765 Patent specification, including its claims, is too laden with ambiguity and subjectivity to merit patent protection.  Based upon my finding that B2 offers no proof of how a person of ordinary skill in the art would view the patent, and has otherwise failed to carry its burden of demonstrating the lack of any genuinely disputed issue of fact requiring trial and its entitlement to its finding patent invalidity as a matter of law, it is hereby therefore respectfully

RECOMMEND, that defendant's motion for summary judgment (Dkt. No. 46) be DENIED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.

 FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

        It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

_____

David E. Peebles
U.S. Magistrate Judge

Dated:        June 11, 2012
              Syracuse, NY